UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RALPH RICHARD BERTELSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:16-CV-00330-AGF |
| ) | |
| CHANNEL BIO, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This diversity matter is before the Court on the motion for summary judgment of Defendants Channel Bio, LLC, Channel Bio Corp., and Channel Bio (collectively, "Channel"). Plaintiff Ralph Richard Bertelsen filed his opposition, and Channel filed a reply. For the reasons set forth below, Defendants' motion for summary judgment will be denied.

## BACKGROUND

This matter arises out of a dispute between Plaintiff and Channel regarding an oral contract allegedly made between Plaintiff and Chris Bertelsen, a local Channel seed salesman.[1] The record establishes the following for purposes of the motion before the Court. In 2011, Plaintiff purchased Channel seed corn, which he planted on 462.5 acres of

---

[1] In his deposition, Plaintiff indicated Chris Bertelsen was his second cousin, but testified that he did not know him well until Chris Bertelsen became a seed salesman. ECF No. 50-2 at 66:24-67:13.

his land and 71 acres of his son's land.  Plaintiff also planted four to five acres of DeKalb corn seed at the edge of one of his fields.  The crops were sprayed with herbicide in the spring, which Plaintiff contends caused the Channel corn to curl up.  Plaintiff claims the DeKalb corn did not have the same reaction to the herbicide.

In July 2011, Plaintiff contacted Chris Bertelsen regarding the problems with the Channel corn.  Chris Bertelsen inspected the corn and documented his visit in Channel's CODI system,[2] reporting that 25-30% of the field had wrapped upon itself in a "buggywhipped looking type of corn."  ECF No. 46-19.  Chris Bertelsen's report did not include any mention of DeKalb corn.  Chris Bertelsen then had a Channel agronomist inspect the fields.

Plaintiff has presented evidence, by way of his deposition testimony and his declaration, that after Chris Bertelsen and Channel's agronomist inspected Plaintiff's fields, Chris Bertelsen told Plaintiff that he would "take care of" Plaintiff and try to make it right by paying Plaintiff the difference in the yield of the DeKalb corn and the Channel corn, multiplied by the year's price of corn in 2011, in exchange for Plaintiff not making public his complaints about the performance of Channel seed.[3]  Plaintiff further presented evidence that Chris Bertelsen was present during the harvest and participated in weighing

---

[2] CODI is Channel's internal complaint system.

[3] Plaintiff contends that there is a 72-bushel per acre yield difference between Channel corn and DeKalb corn.  Multiplying 72 bushels times 462.5 acres results in a 33,000 bushel loss in Plaintiff's yield in 2011.  Plaintiff contends that the cost of corn in 2011 was $6.90 per bushel, which means that Channel owed Plaintiff $229,700 to cover the difference in yield between the Channel corn and the DeKalb corn.

the DeKalb corn and Channel corn for purposes of fulfilling the oral contract. Specifically, Brian Bertelsen, Plaintiff's son, testified by deposition that he recalled Chris Bertelsen riding in the combine harvester with Plaintiff during harvest and measuring the Channel and DeKalb corn. Brian Bertelsen's understanding was that Chris Bertelsen was taking measurements of both the DeKalb and Channel corn to determine the difference in yield, which would then govern the compensation calculation. Brian Bertelsen also testified that he was told by Chris to "kept quiet," and Chris Bertelsen would "make it right." ECF No. 50-3.

It is undisputed that Chris Bertelsen completed a field service call report dated December 1, 2011, in which he indicated that Plaintiff's corn yield was 136 bushels per acre, but that other corn in the area yielded 175 bushels per acre. ECF No. 46-4. It is further undisputed that the report indicated that Plaintiff's entire field was Channel corn, and the "cost" category indicated $30,000, which reflected the approximate total cost of the Channel seed Plaintiff purchased in 2011.

Channel presented evidence that in December 2011, Chris Bertelsen sought a refund from Channel for the price Plaintiff paid for the seed (approximately $30,000) and offered Plaintiff a 50% discount on his 2012 seed, which Channel contends was rejected by Plaintiff. Plaintiff told Chris Bertelsen that the DeKalb corn planted on his field had a higher yield than the Channel corn, and Plaintiff asked Chris Bertelsen to propose the difference between the Channel yield and the DeKalb yield as compensation. This offer was rejected by Chris Bertelsen's supervisors. Chris Bertelsen testified that December

3

2011 was the first time he heard about DeKalb corn being planted in Plaintiff's field. Channel contends this is consistent with Chris Bertelsen's CODI entries regarding Plaintiff's corn.

Plaintiff filed a complaint in the Circuit Court of Warren County, Illinois, asserting claims of breach of oral contract and breach of implied warranty against Channel. Channel removed the action to the United States District Court for the Central District of Illinois, and the matter was subsequently transferred to this Court based on an applicable choice-of-forum clause. On November 29, 2016, this Court granted Channel's motion to dismiss as to the count of breach of implied warranty, leaving only the count for breach of oral contract. ECF No. 34.

Channel now argues that it is entitled to summary judgment because Plaintiff's claim for breach of contract fails, in that the parties did not have a meeting of the minds about the terms of the oral contract, and that the terms, if any, were too indefinite to constitute an enforceable contract. Plaintiff responds in opposition that he entered into an oral contract with Chris Bertelsen in July 2011 and that they established clear terms at that time: Plaintiff would refrain from making his complaints about Channel corn public, in exchange for Channel paying the difference between the yield of DeKalb corn and Channel corn. Therefore, Plaintiff argues that the terms of the contract were sufficiently definite to survive summary judgment and there are questions of fact that require resolution by a jury.

## **STANDARD OF REVIEW**

The standard for summary judgment is well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Littrell v. City of Kansas City, Mo.*, 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Littrell*, 459 F.3d at 921.

"To survive a motion for summary judgment, the nonmoving party must 'substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health Sys.*, 348 F.3d 732, 733 (8th Cir. 2003) (internal citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005). Viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, if there are no genuine issues of material fact,

the moving party is entitled to judgment as a matter of law. *Samuels v. Kansas City Mo. Sch. Dist.*, 437 F.3d 797, 801 (8th Cir. 2006).

## **DISCUSSION**

1. Choice of Law

As an initial matter, the parties dispute whether Illinois or Missouri state law is applicable to this contract action. The Court agrees with Channel that both Missouri and Illinois law have the same elements for contract formation, and both states look to the parties' objective conduct to determine the existence of a meeting of the minds. *See, e.g., Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738, 754–55 (Ill. App. Ct. 2013); *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010). "[A] conflict does not exist 'unless the interests of the two states cannot be reconciled.'"[4] *Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1028 (8th Cir. 2003). Therefore, the Court will cite to Missouri law to determine whether a contract was formed and breached. *See Thomas D. Wilson Consulting, Inc. v. Keely & Sons, Inc.*, No. 405CV02115-ERW, 2007 WL 1774434, at *5 (E.D. Mo. June 18, 2007). The fact that the case was transferred from Illinois does not change this conclusion.[5]

---

[4] Illinois applies the same rule: "a choice-of-law determination is required only when the moving party has established an actual conflict between state laws." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 909 (Ill. 2014).

[5] Generally, the transferee court must apply the state law that would have been applied if there had been no change of venue. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). However, where—as here—transfer is based on the enforcement of a valid forum-selection clause, the district court "should not apply the law of the transferor venue to which the parties waived their right." *Atl. Marine Const. Co. v. U.S. Dist. Court for W.*

2. Breach of Contract

Under Missouri law, for breach of contract, a plaintiff must establish "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney*, 304 S.W.3d at 104. "An enforceable contract requires that there be a definite meeting of the minds and that the essential terms of the contract be certain or capable of being rendered certain." *Sweetarts v. Sunline, Inc.*, 423 F.2d 260, 261 n.2 (8th Cir. 1970).

Since a finding that such an oral contract exists turns largely on the intentions of the parties, *Collins v. Swope,* 605 S.W.2d 538, 540 (Mo. App. 1980), it is ordinarily not an issue appropriate to summary disposition. *Kisco Co. v. Verson Allsteel Press Co.,* 738 F.2d 290, 294 (8th Cir. 1984). However, "[i]t is fundamental that an oral contract will not be found unless the parties have reached an understanding as to *all* the essential terms of the agreement." *Middleton Enters., Inc. v. Churm*, 618 F. Supp. 477, 480 (E.D. Mo. 1985). "To determine whether a meeting of the minds has occurred and an agreement has been reached, the court looks to the intention of the parties as expressed or manifested in their words or acts." *Karsch v. Carr*, 807 S.W.2d 96, 99 (Mo. Ct. App. 1990).

The Court is "guided by principles of law applied with common sense and in light of experience when determining whether the terms are too uncertain to create an enforceable contract." *Scott v. Pub. Sch. Ret. Sys. of Mo.,* 764 F. Supp. 2d 1151, 1162 *Dist. of Tex.*, 134 S. Ct. 568, 583 (2013).

(Mo. Ct. App. 2011). Here, the record demonstrates genuine issues of material facts regarding the creation of and the terms of the alleged oral contract. Chris Bertelsen testified that he promised Plaintiff that he would "make it right" and find a solution to the issue, while Plaintiff contends that he and Chris Bertelsen agreed to precise contract terms. Although the CODI reports fail to mention DeKalb corn or the oral contract, this alone does not resolve as a matter of law whether a contract was formed. Instead, it merely supports Chris Bertelsen's version of events.

Plaintiff presented evidence, by way of his deposition, his declaration, and the deposition of his son, Brian Bertelsen, that he entered into an oral contract with Chris Bertelsen in July 2011 and that they established clear terms at that time. This, Plaintiff argues, provided the parties with a definite formula by which to determine the amount Channel was to pay to Plaintiff. *See, e.g. Ark.-Mo. Forest Prods., LLC v. Lerner*, 486 S.W.3d 438, 450 (Mo. Ct. App. 2016) (holding that while the terms must be definite, the terms may not always need to be detailed if they are capable of being ascertained in the future). The issue of contract formation in this case—whether the parties had a meeting of the minds regarding the terms—will turn on the credibility of the parties involved. Construed in a light most favorable to Plaintiff, the non-moving party, there are genuine issues of material fact that must be resolved by a jury.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (ECF No. 45) is **DENIED.**

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 7th day of December, 2017